IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| In re:<br><br>Biomoda, Inc.,[1]<br><br>Debtor. | Chapter 11<br><br>No. 13-13768-t11 |

**MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTOR TO OBTAIN POSTPETITION FINANCING, (II) GRANTING LIENS AND PRIORITY CLAIMS, AND (III) SCHEDULING A FINAL HEARING ON THE DEBTOR'S MOTION**

Biomoda, Inc., debtor and debtor in possession (the "Debtor") in the above-captioned chapter 11 case, pursuant to 11 U.S.C. §§ 361 and 364, Rules 2002 and 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-3 of the Local Rules for the United States Bankruptcy Court for the District of New Mexico (the "Local Rules"), hereby moves the Court for entry of interim and final orders: (i) authorizing the Debtor to obtain postpetition financing on the terms and conditions set forth herein; (ii) granting liens and priority claims; and (iii) scheduling a final hearing for entry of an order (the "Final Order") on the Debtor's motion to incur the proposed postpetition financing on a final basis. The Debtor's proposed interim order is attached hereto as Exhibit 1 (the "Interim Order"). As grounds for this motion (the "Motion"), the Debtor states as follows:

**Jurisdiction and Venue**

1.  The Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.  Venue for proceedings on this motion is proper in this Court pursuant to 28 U.S.C. § 1409.

---

[1] The Debtor's address is 609 Broadway NE, Albuquerque, NM, 87102.

**Background**

3.     On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code").

4.     The Debtor intends to operate its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner, and no official committee has yet been appointed in this case.

5.     The factual background relating to the Debtor's commencement of this chapter 11 case and the factual basis for the relief sought herein are set forth in the *Declaration of Maria Zannes in Support of the Chapter 11 Petition and First Day Motions* (the "Zannes Declaration") filed contemporaneously with this Motion and incorporated herein by reference.

**The Debtor in Possession Financing**

6.     Prior to the Petition Date, the Debtor entered into that certain *Debtor-in-Possession Credit Facility Term Sheet* dated as of November 15, 2013 (as amended, supplemented, restated, or otherwise modified from time to time, the "DIP Term Sheet") by and between the Debtor, as borrower, and Maria Zannes, ACH Consultants, LLC, and Steven Girgenti, as lenders (each a "DIP Lender" and collectively the "DIP Lenders") (a copy of the DIP Term Sheet is attached to the proposed Interim Order as Exhibit A). As more fully described below, the DIP Term Sheet provides for a multiple draw term loan facility (the "DIP Facility") in an aggregate principal amount of up to $100,000 (the "DIP Loan").

7.     The Debtor has negotiated the DIP Term Sheet in good faith and at arm's length with the DIP Lenders. The Debtor believes that the terms of the DIP Term Sheet are fair and

reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

8. The Debtor is unable to obtain (i) adequate unsecured credit allowable either under sections 364(b) or 364(c)(1) of the Bankruptcy Code, (ii) adequate secured credit allowable under section 364(c)(2) of the Bankruptcy Code (secured by a senior lien on unencumbered assets of the estate), (iii) adequate secured credit allowable under section 364(c)(3) of the Bankruptcy Code (secured by a junior lien on encumbered assets of the estate), or (iv) secured credit under section 364(d)(1) of the Bankruptcy Code on terms more favorable than the terms of the DIP Facility. The only source of secured credit available to the Debtor at this time is the DIP Facility. The Debtor requires the financing under the DIP Facility in order to satisfy its postpetition liquidity needs during its reorganization process.

9. The Debtor seeks to obtain approval of the DIP Facility in order to minimize disruption of its operations and to pay operating expenses which are critical to its continued viability as a going concern business, including relocation of its operations to San Antonio, Texas, and, therefore, to maintain its value as a going concern business.

10. The Debtor's prepetition secured lenders (collectively, the "Prepetition Lenders") have consented to the Debtor's proposed DIP Facility pursuant to the terms of that certain *Plan Support Agreement* dated as of November 5, 2013 (the "Plan Support Agreement") by and between the Debtor and the Debtor's Prepetition Lenders, whereby the Prepetition Lenders have agreed to, among other things, (i) forbear from exercising any of their respective remedies under the loan documents related to each of the prepetition secured loan facilities, and (ii) support the Debtor's efforts to reorganize and exit this chapter 11 case as a going concern. A copy of the Plan Support Agreement is attached hereto as Exhibit 2.

11.     After considering all of its alternatives with respect to postpetition financing in this difficult economic environment, the Debtor concluded, in an exercise of its sound business judgment, that the financing to be provided by the DIP Lenders pursuant to the terms of the DIP Term Sheet and the proposed Interim Order represent the best financing presently available to the Debtor.

12.     In order to avoid the immediate and irreparable harm to the Debtor's business operations and the estate that would result should such financing not be made available at this time, the Debtor seeks, among other things, interim approval of this Motion.

## The DIP Financing

13.     Pursuant to Bankruptcy Rule 4001, the significant elements of the proposed DIP Facility are as follows:

| | |
|---|---|
| Borrower: | Biomoda, Inc. |
| Guarantor(s): | None |
| DIP Lenders: | Maria Zannes, ACH Consultants, LLC, Steven Girgenti, and other lenders party hereto from time to time |
| Secured Parties: | The holders of Class 1 Secured Claims[2] and the DIP Lenders, collectively. |
| Closing Date: | "Interim Closing Date" means the date on which the "Conditions Precedent to the Interim DIP Loan" set forth below are satisfied or waived by the DIP Lenders.<br><br>"Final Closing Date" means the date on which the conditions precedent to the Final DIP Loan (including, without limitation, entry of the final order) shall have been satisfied or waived. |
| Type and Amount: | A multiple draw term loan facility in an aggregate principal amount of up to $100,000 (the "Maximum Commitment") to be made available in the following manner: Maria Zannes shall make available up to $25,000 of the DIP Loan; ACH Consultants, LLC shall make available up to $25,000 of the DIP Loan; and Steven Girgenti shall make available up to $50,000 of the DIP Loan. |

---

[2] "**Class 1 Secured Claims**" mean all allowed claims either (a) secured by liens on the Debtor's property; or (b) subject to setoff under section 553 of the Bankruptcy Code.

4

2090332v3/NY

Case 13-13768-t11    Doc 12    Filed 11/20/13    Entered 11/20/13 17:43:19 Page 4 of 16

| | |
|---|---|
| Availability: | In accordance with the DIP Term Sheet, to be made available to Borrower as follows: |

<u>Interim DIP Loan</u>: A term loan facility to be available in an amount of up to $100,000 commencing on the Interim Closing Date in aggregate principal amounts necessary to fund the reorganization process, all subject to the provisions of the DIP Term Sheet (the "<u>Interim DIP Loan</u>"); and

<u>Final DIP Loan</u>: A term loan facility in an aggregate principal amount not to exceed the Maximum Commitment (inclusive of all draws under the Interim DIP Loan), subject to the terms and on the conditions set forth in any loan documents required pursuant to the terms of the Dip Term Sheet (the "<u>Final DIP Loan</u>").

| | |
|---|---|
| Purpose: | DIP Loans will be used for (a) working capital and general corporate purposes of the Debtor, (b) bankruptcy-related costs and expenses (subject to the Carve-Out (defined below)), (c) costs and expenses related to the reorganization process, and (d) for any other purpose agreed upon in the DIP Facility Documents (as defined below). |

None of the proceeds of the DIP Loans shall be used in connection with the investigation (including discovery proceedings), initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the prepetition secured lenders or DIP Lenders (in any capacity), including in connection with the validity of the liens granted to the DIP Lenders or the prepetition secured lenders, except up to the amount of $10,000 as set forth in the final order.

| | |
|---|---|
| Priority: | The DIP Loan and other liabilities and obligations of the Borrower to the DIP Lenders under or in connection with the DIP Term Sheet, the DIP Facility Documents, the Interim Order or Final Order (collectively, the "<u>DIP Obligations</u>") shall be: |

(i) pursuant to section 364(c)(1) of the Bankruptcy Code, entitled to superpriority administrative expense claim status in the chapter 11 case with priority over any and all administrative expenses, whether heretofore or hereafter incurred, of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code (but in all cases subject to the Carve-Out); and

(ii) pursuant to section 364(d) of the Bankruptcy Code, secured by a perfected equal security interest and lien granted to the DIP Lenders (the "<u>Pari Passu DIP Liens</u>") in and on all the Collateral (but in all cases subject to the Carve-Out). The Pari Passu DIP Liens shall not be subject to being subordinated to any other

5

|  | liens or security interests (whether currently existing or hereafter created), subject in each case only to permitted exceptions to be expressly agreed upon in writing by each of the prepetition secured lenders and the DIP Lenders in their sole and absolute discretion or imposed by applicable non-bankruptcy law (collectively, the "Permitted Liens"), and the Pari Passu DIP Liens shall be junior and subordinate to payment of the Carve-Out. |
|---|---|
|  | Under the proposed Interim Order, the term "Carve-Out" means, collectively: (i) fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) or to the Clerk of the Bankruptcy Court (the "Case Administration Fees"), (ii) unpaid postpetition professional fees and expenses ("Debtor Professional Fees") payable to each legal or financial advisor retained by the Debtor (the "Debtor Professionals") that are incurred or accrued prior to the date of the occurrence of a Termination Event (as defined below) and ultimately allowed by the Court pursuant to sections 328, 330, 331 and 503 of the Bankruptcy Code or any order of the Court (whenever such fees may be actually incurred prior to the Termination Event), *provided however* that the DIP Lenders shall not be obligated to fund any amounts in excess of the Maximum Commitment;  (iii) unpaid professional fees and expenses (together with the Debtor Professional Fees, the "Professional Fees") payable to each legal or financial advisor retained by the Committee that are incurred or accrued prior to the date of the occurrence of a Termination Event (as defined in the Interim Order or Final Order as in effect) and ultimately allowed by the Court pursuant to sections 328, 330, 331 and 503 of the Bankruptcy Code or any order of the Court (whenever such fees may be actually incurred prior to the Termination Event), and (iv) Case Administration Fees and Professional Fees paid on or after the date of the occurrence of a Termination Event in an aggregate amount not to exceed $15,000. |
| Collateral | "Collateral" means, collectively, all of the Debtor's issued and pending U.S. and International patents as of September 25, 2013. |
| Interest Rate: | Eight percent (8%) per annum, compounded annually (the "Interest"), to be calculated on the basis of 365 days a year. |
| Maturity Date: | The DIP Loan shall mature on the earliest to occur of the following (such date, the "Maturity Date"): |
|  | (i) August 1, 2014 (the "Outside Date"); and |
|  | (ii) the acceleration of the DIP Loan and the termination of the commitments to make the DIP Loan in accordance |

6

|   |   |
|---|---|
| | with the terms of the DIP Term Sheet or the DIP Facility Documents, as applicable. |
| <u>Representations and Warranties</u>: | Customary and appropriate for financings of this type. |
| <u>Conditions Precedent</u> | <u>Conditions Precedent to Interim DIP Loan</u>. The obligations of the DIP Lenders to make the Interim DIP Loan will be subject to satisfaction, or waiver by the DIP Lenders in their sole and absolute discretion, of the following conditions precedent: |

      (i)    the Interim Order, as entered by the Bankruptcy Court, shall not have been reversed, modified, amended, stayed or vacated, or in the case of any modification or amendment, in a manner, or relating to a matter, without the express, prior written consent of each of the DIP Lenders, and the Debtor shall be in compliance in all respects with the Interim Order; and

      (ii)    no Event of Default shall have occurred and be continuing on the Interim Closing Date.

<u>Covenants</u>: With respect to affirmative covenants, customary for debtor-in-possession financings of this type; <u>provided that</u>, the Debtor shall:

      (i)    comply with the provisions of the DIP Facility Documents; and

      (ii)    take, or cause to be taken, all appropriate action, to do or cause to be done all things necessary, proper or advisable under applicable law, and to execute and deliver such documents and other papers, as may be required or reasonably requested by the DIP Lenders to carry out the provisions of the DIP Facility Documents.

With respect to negative covenants, customary for debtor-in-possession financings of this type and otherwise as specified in the DIP Facility Documents, and subject to customary grace periods and cure periods, and materiality thresholds; <u>provided</u>, that the Debtor shall not, without the express, prior written consent of each of the DIP Lenders, do, cause to be done, or agree to do or cause to be done, any of the following:

      (i)    create, incur, assume or suffer to exist any indebtedness, except indebtedness expressly contemplated by the DIP Term Sheet;

      (ii)    create, incur, assume or suffer to exist any lien upon any of its property, assets, income or profits, whether now owned or hereafter acquired, except Permitted Liens; or

7

20903321v3/NY     Case 13-13768-t11    Doc 12    Filed 11/20/13    Entered 11/20/13 17:43:19 Page 7 of 16

|                   | (iii) | convey, sell, lease, assign, transfer or otherwise dispose of (including through a transaction of merger or consolidation) any of its property, business or assets, whether now owned or hereafter acquired, out of the ordinary course of business. |
|---|---|---|
| Events of Default: | | Customary for debtor-in-possession financings of this type, and subject to customary grace periods and cure periods, and materiality thresholds, all reasonably acceptable to the DIP Lenders, or as otherwise specified in the DIP Facility Documents (collectively, "**Events of Default**"); <u>provided</u> <u>that</u> "Events of Default" shall include the following: |
|  | (i) | failure by the Debtor to be in compliance in all respects with any provision of the DIP Facility Documents; |
|  | (ii) | reversal, modification, amendment, stay or vacatur of the Interim Order or the Final Order, as entered by the Bankruptcy Court, without the express, prior written consent of each of the DIP Lenders; |
|  | (iii) | the filing with the Bankruptcy Court of a plan of reorganization in the chapter 11 Case that does not provide for the conversion of the entire amount loaned to the Debtor by the DIP Lenders into new common shares for the reorganized debtor in accordance with the recapitalization table attached to the Plan Term Sheet[3] as Exhibit A and for the payment of any and all accrued interest and fees of the DIP Lenders; |
|  | (iv) | the appointment in the chapter 11 case of a trustee, receiver, examiner, or responsible officer with enlarged powers relating to the operation of the business of any Obligor (powers beyond those set forth in sections 1106(a)(3) and (a)(4) of the Bankruptcy Code); |
|  | (v) | the filing of a motion by the Debtor seeking dismissal of the chapter 11 Case or the conversion of the chapter 11 Case to a case under chapter 7 of the Bankruptcy Code; |
|  | (vi) | the granting of relief from the automatic stay by the Bankruptcy Court as to any material assets of the Debtor to any other creditor or party in interest in the chapter 11 case; and |
|  | (vii) | any provision in the DIP Term Sheet shall cease to be |

---

[3] "**Plan Term Sheet**" means that certain Plan of Reorganization Term Sheet attached as an exhibit to the Plan Support Agreement dated as of November 5, 2013 by and between the Debtor and certain consenting lender parties thereto.

8

| | binding on or enforceable against the parties hereto. |
|---|---|
| Remedies Upon Default: | Upon the occurrence and during the continuance of any Event of Default under the DIP Term Sheet or the DIP Order, subject to three (3) business days' notice to the Debtor and an opportunity to seek an expedited hearing before the Bankruptcy Court, (at which hearing the sole issue shall be limited to whether or not an Event of Default has occurred), the DIP Lenders may take all or any of the following actions without further order of or application to the Bankruptcy Court, and notwithstanding the automatic stay: |
| | (i) declare the principal of, and accrued interest on, any outstanding DIP Loans to be immediately due and payable; or |
| | (ii) terminate any further commitment to lend to the Borrower. |
| Governing Law and Jurisdiction | The laws of the State of New Mexico (except as governed by the Bankruptcy Code) shall govern the DIP Term Sheet and the DIP Facility Documents, except with respect to conflicts of laws. |
| | The DIP Facility Documents will provide that the Borrower shall submit to the exclusive jurisdiction of the Bankruptcy Court and shall waive any right to trial by jury. |

14. Pursuant to Local Rule 4001-3, the Debtor states that one of the DIP Lenders – Maria Zannes, the Debtor's Chief Executive Officer and Chairman of the Debtor's Board of Directors – is an "insider" of the Debtor as defined in section 101(31) of the Bankruptcy Code. The Debtor further states that ACH Consultants, LLC and Steven Girgenti are Prepetition Lenders as more fully described in the Zannes Declaration.

## Relief Requested

15. By this Motion, the Debtor requests entry of the Interim Order and the Final Order authorizing:

> a. in the case of the Interim Order, the Debtor to borrow up to an aggregate principal amount of $100,000 as set forth in the DIP Term Sheet, or, in the case of the Final

Order, the Debtor to borrower the full amount of the DIP Facility up to an aggregate principal amount not to exceed the Maximum Commitment;

b. the Debtor to execute and enter into such loan documents as are required pursuant to the DIP Term Sheet (the "<u>DIP Facility Documents</u>"), and to perform such other and further acts as may be required by the DIP Facility Documents;

c. the granting of the Pari Passu DIP Liens in the Collateral of equal priority as the Prepetition Liens to secure any and all of the obligations under the DIP Facility;

d. pursuant to Bankruptcy Rule 4001, that an interim hearing (the "<u>Interim Hearing</u>") on this Motion be held before the Court to consider entry of the Interim Order; and

e. the scheduling of a final hearing (the "<u>Final Hearing</u>") to consider entry of the Final Order.

## Basis For Relief Requested

16. The Debtor proposes to obtain financing under the DIP Facility by providing security interests and other liens as set forth above pursuant to sections 364(c) and (d) of the Bankruptcy Code. The statutory requirement for obtaining postpetition credit under section 364(c) of the Bankruptcy Code is a finding, made after notice and hearing, that the debtor is "unable to obtain unsecured credit allowable under section 503(b)(1) of the [the Bankruptcy Code] as an administrative expense." 11 U.S.C. § 364(c). If a debtor is unable to obtain credit under the provisions of section 503(b)(1) of the Bankruptcy Code, the debtor may obtain credit secured by an equal lien on property of the estate that is already subject to a lien. 11 U.S.C. § 364(d).
...

17. With respect to postpetition debt secured by *pari passu* liens, section 364(d)(1) of the Bankruptcy Code provides that the Court may, after notice and a hearing, authorize a debtor to obtain credit or incur debt secured by an equal lien on property of the estate that is subject to a lien, only if:

    a. the trustee is unable to obtain credit otherwise; and

    b. there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

11 U.S.C. § 364(d).

18. With respect to the requirement that a debtor show that it is unable to obtain credit otherwise, courts have generally held that a debtor need only demonstrate "by a good faith effort that credit was not available without" the protections afforded to potential lenders by Sections 364(c) and (d) of the Bankruptcy Code. *In re YL West 87th Holdings I LLC*, 423 BR 421, 441 (Bankr. Court, S.D.N.Y. Jan. 13, 2010) ("Courts have generally deferred to a debtor's business judgment in granting section 364 financing"); *In re General Growth Properties, Inc.*, 412 B.R. at 125 (debtor has an obligation to make "reasonable efforts, under the circumstances . . .to obtain [unsecured financing], in the ordinary course of business or otherwise" ); *In re Harborwalk, LP*, Case No. 10-80043-G3-11 (LZP) (Bankr. S.D. Texas, Jan. 29, 2010) ("Section 364(d)(1) does not require that a debtor seek credit from every possible source, but a debtor must show that it made a reasonable effort to obtain postpetition financing from other potential lenders on less onerous terms and that such financing was unavailable.").

19. The Debtor faces liquidity constraints and was forced to file this case to preserve the value of its assets. The Collateral constitutes the bulk of the value of Debtor's assets and is subject to the liens granted to the Prepetition Lenders. Because of the substantial amount of the

11

prepetition secured debt, obtaining the financing needed by Debtor as unsecured debt or debt secured by liens junior to the liens of the Prepetition Lenders was not a realistic option.

20. In considering proposed postpetition financing, courts also analyze whether the terms of postpetition financing are fair and reasonable in light of the relative circumstances of both the debtor and the potential lender. *In re Farmland Indus., Inc.*, 294 B.R. 855, 886 (Bankr. W.D. Mo. 2003); *see also Unsecured Creditors' Comm. Mobil Oil Corp. v. First Nat'l Bank & Trust Co. (In re Ellingsen MacLean Oil Co.)*, 65 B.R. 358, 365 (W.D. Mich. 1986) (a debtor may have to enter into hard bargains to acquire funds).

21. The proposed terms of the DIP Term Sheet are fair, reasonable, and adequate under the circumstances. First, the Debtor made a concerted, good-faith effort to obtain credit on the most favorable terms available in the market. No other lender was willing to provide the funding necessary to fund the continued operation of Debtor's business on more favorable terms than those provided in the DIP Facility. Against this backdrop, the Debtor and its proposed bankruptcy counsel evaluated the proposed financing offered by the DIP Lenders and engaged in arms' length negotiations with the DIP Lenders regarding the proposed terms and conditions of the DIP Facility. The Debtor, in its sound business judgment, agreed to the DIP Facility as the proposal best suited to the Debtors' current needs. Moreover, the terms and conditions of the DIP Facility are consistent with the terms of the Plan Support Agreement thus providing for the Prepetition Lenders' consent to the proposed DIP Facility. Lastly, the terms of the DIP Facility are fair and reasonable given (i) no fees are being charged by the DIP Lenders, (ii) the interest rate is a reasonable eight percent, and (iii) the interest rate does not increase upon an Event of Default.

12

Case 13-13768-t11    Doc 12    Filed 11/20/13    Entered 11/20/13 17:43:19 Page 12 of 16

22. In contrast to the modest provisions in the Debtor's DIP Facility, courts routinely authorize material lender incentives beyond the explicit liens and other rights specified in section 364 of the Bankruptcy Code. *See, e.g., In re Defender Drug Stores, Inc.*, 145 B.R. 312, 316 (9th Cir. BAP 1992) (authorizing credit arrangement under Section 364, including a lender "enhancement fee"). Accordingly, the terms of the DIP Facility are fair, reasonable and adequate.

23. In addition, as noted above, the Debtor requires access to working capital in the form of postpetition financing to continue in business, preserve its assets, and to reach the stage where they are positioned to receive the benefits of the proposed exit financing, as described in the Plan Support Agreement. Absent additional working capital, the Debtor would be forced to a hard-stop liquidation.

24. Moreover, an equal lien on property of the estate that is already subject to a lien may be granted under section 364(d) of the Bankruptcy Code with the consent of the secured creditors whose lien is at issue. *See In re El Paso Refinery, L P.*, 171 F.3d 249, 252 (5th Cir. 1999) (noting that "El Paso gave BBL a priming lien, which by agreement was given a priority over the preexisting first lien of a group of Term Lenders"). The Prepetition Lenders have agreed to the granting of the Pari Passu DIP Liens. Accordingly, the Court should authorize the Debtor to grant the Pari Passu DIP Liens to the DIP Lenders to secure the Debtor's obligations under the DIP Facility.

25. Accordingly, the Debtor respectfully submits that it has satisfied the requirement of Sections 364(c) and (d) of the Bankruptcy Code that alternative credit on more favorable terms was unavailable to the Debtor and that it should be authorized to enter into the DIP Facility.

## Interim Approval Should Be Granted

26. Bankruptcy Rule 4001(c)(2) provides that a final hearing on a motion to obtain credit pursuant to section 364 of the Bankruptcy Code may not be commenced earlier than fourteen (14) days after the service of such motion. Upon request, however, a bankruptcy court is empowered to conduct a preliminary expedited hearing on the motion and authorize the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to Debtor's estate. *See* Fed.R.Bankr.P. 4001(c)(2).

27. The Debtor requests that the Court authorize the Debtor, on an interim basis pending the Final Hearing, to borrow under the DIP Facility an amount up to $100,000. This relief will enable the Debtor to operate its business in a manner that will permit it to preserve and maximize value and thereby avoid immediate and irreparable harm and prejudice to the estate and all parties in interest pending the Final Hearing.

28. Absent interim approval of the interim borrowing under the DIP Facility, Debtor's business would suffer immediate and irreparable harm. Specifically, the Debtor will be unable to continue its business operations and would be unable to complete the reorganization process.

## Final Hearing

29. The Debtor further respectfully requests that the Court set a date and time for the Final Hearing to consider the entry of a Final Order approving the relief sought in this Motion.

## Request For Immediate Relief and
## Waiver of Stay to Avoid Immediate and Irreparable Harm

30. By this Motion, the Debtor seeks a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed.R.Bankr.P. 6004(h). For the

14

reasons set forth above, the Debtor submits that ample cause exists to justify a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h).

### Notice

31. Debtor will serve notice of this Motion upon: (i) the Office of the United States Trustee; (ii) the Debtor's list of creditors holding the twenty (20) largest unsecured claims; (iii) the Debtor's Prepetition Lenders; and (iv) the DIP Lenders. Additionally, notice of (i) the Court's entry of the Interim Order and (ii) the hearing before the Court on the Final Order will be provided as required. In light of the nature of the relief requested, the Debtor submits that no other or further notice is necessary.

**WHEREFORE,** the Debtor respectfully requests that this Court enter the proposed Interim Order approving the relief requested above and granting such other relief as is just and proper.

Dated: November 20, 2013
Albuquerque, New Mexico

Respectfully submitted,

**KELEHER & MCLEOD, P.A.**

*/s/ Deron B. Knoner*
Deron B. Knoner
P.O. Box AA
Albuquerque, New Mexico 87102
Tel: (505) 346-4646
Fax: (505) 346-1370

PROPOSED NEW MEXICO ATTORNEYS FOR DEBTOR AND DEBTOR IN POSSESSION

-and-

**COOLEY LLP**
Keith McDaniels (*pro hac vice to be filed*)
Lesley A. Kroupa (*pro hac vice to be filed*)
101 California Street, 5th Floor
San Francisco, CA 94111-5800
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

PROPOSED LEAD ATTORNEYS FOR DEBTOR AND DEBTOR IN POSSESSION

16