

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW MEXICO

In re:

Biomoda, Inc.,[1]

               Debtor.

Chapter 11

No. 13-13768-t11

Related to Docket No. 12

### INTERIM ORDER (I) AUTHORIZING THE DEBTOR TO OBTAIN POSTPETITION FINANCING, (II) GRANTING LIENS AND PRIORITY CLAIMS, AND (III) SCHEDULING A FINAL HEARING ON THE DEBTOR'S MOTION

Upon the motion dated November 20, 2013 (the "Motion")[2], seeking entry of an interim order (this "Interim Order"), *inter alia,*

    (a)     authorizing Biomoda, Inc. (the "Debtor") to obtain secured postpetition financing (the "DIP Facility") on an interim basis pursuant to the terms and conditions of the DIP Term Sheet attached hereto as **Exhibit A**;

    (b)     authorizing the Debtor to execute any DIP Facility Documents, and to perform such other acts as may be necessary or desirable in connection therewith,

---

[1]     The Debtor's address is 609 Broadway NE, Albuquerque, NM, 87102.

[2]     Unless otherwise defined, capitalized terms used herein shall have the meanings ascribed to them in the Motion.

(c) granting to the DIP Lenders the Pari Passu DIP Liens on the Collateral to secure the DIP Facility and all obligations owing and outstanding thereunder and under this Interim Order and Final Order, as applicable (collectively, the "DIP Loan Obligations"); granting allowed superpriority administrative expense claims to the DIP Lenders; and

(d) scheduling the Final Hearing, pursuant to Rule 4001(c)(2) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to consider entry of a final order (the "Final Order"), *inter alia*, approving and authorizing the DIP Facility (including, without limitation, the advance of the financing pursuant to this Interim Order) on a final basis;

and the interim hearing on the Motion (the "Interim Hearing") having been held on November 22, 2013; and upon all of the pleadings filed with the Court and the evidence proffered or adduced at the Interim Hearing; and the Court having heard and resolved or overruled any and all objections to the interim relief requested in the Motion; and it appearing that the relief requested in the Motion is in the best interests of the Debtor, its estate, and creditors; and upon the record herein; and after due deliberation thereon, and good and sufficient cause appearing therefor:

**IT IS HEREBY FOUND AND DETERMINED THAT:[3]**

A. Petition Date.  On November 20, 2013 (the "Petition Date"), the Debtor commenced its chapter 11 case (the "Chapter 11 Case") by filing a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of New Mexico (the "Court").  The Debtor is operating its business and managing its affairs as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  As of the date hereof, no trustee, examiner, or official committee of creditors holding unsecured claims (a "Creditors' Committee") has been appointed in the Chapter 11 Case.

---

[3] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, as applicable, pursuant to Bankruptcy Rule 7052.

B.     Jurisdiction; Venue.  The Court has jurisdiction over this Chapter 11 Case, the parties, and the Debtor's property pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(D).  The Court is a proper venue of this Chapter 11 Case and the Motion under 28 U.S.C. §§ 1408 and 1409.

C.     Notice.  Notice of the Motion has been provided to: (i) the Office of the United States Trustee; (ii) the Debtor's list of creditors holding the twenty (20) largest unsecured claims; (iii) the Debtor's Prepetition Lenders; and (iv) the DIP Lenders; by telecopy, email, overnight courier and/or hand delivery.  Because of the nature of the relief requested, the Debtor respectfully submits that no other or further notice of the relief requested in this Motion need be given.

D.     Purpose and Necessity of Financing.  As discussed in the Motion, the Debtor requires the financing under the DIP Facility to (i) maximize and preserve the value of its business pending confirmation of its plan of reorganization to be filed in this Chapter 11 Case, to satisfy payroll obligations, and for other working capital and general corporate purposes of the Debtor consistent with the terms set forth in the DIP Facility, and (ii) to pay fees and expenses related to this Chapter 11 Case.  If the Debtor does not obtain authorization to borrow under the DIP Facility, it will suffer immediate and irreparable harm.  The Debtor is unable to obtain adequate unsecured credit allowable as an administrative expense under section 503 of the Bankruptcy Code, or other sufficient financing under sections 364(c) or (d) of the Bankruptcy Code, on equal or more favorable terms than those set forth in the DIP Term Sheet, based on the totality of the circumstances.  After considering alternatives, the Debtor has concluded, in the exercise of its sound business judgment, that the DIP Facility represents the best financing available to the Debtor at this time.

E.    <u>Good Cause Shown</u>.  Good cause has been shown for entry of this Interim Order.  The ability of the Debtor to obtain sufficient working capital and liquidity under the DIP Facility is vital to the Debtor's estate and creditors.  The liquidity to be provided under the DIP Facility will enable the Debtor to preserve the value of the Debtor's business pending exit from the Chapter 11 Case.  Among other things, entry of this Interim Order is necessary to maximize the value of the Debtor's assets and to avoid immediate and irreparable harm to the Debtor and its estate, and, accordingly, is in the best interests of the Debtor, its estate and its creditors.

F.    <u>Good Faith</u>.  The terms of the DIP Facility are more favorable to the Debtor than those available from alternative sources.  Based upon the record before the Court, the DIP Term Sheet has been negotiated in good faith and at arm's-length among the DIP Lenders and the Debtor.  Any DIP Loans and other financial accommodations made to the Debtor by the DIP Lenders pursuant to the DIP Term Sheet and this Interim Order shall be deemed to have been extended by the DIP Lenders in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and the DIP Lenders shall be entitled to all protections and benefits afforded thereby.

G.    <u>Fair Consideration and Reasonably Equivalent Value</u>.  The Debtor has received and will receive fair consideration and reasonable value in exchange for access to the DIP Loans and all other financial accommodations provided under the DIP Facility Documents and this Interim Order.  The terms of the DIP Facility Documents are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

H.    <u>Immediate Entry of Interim Order</u>.  The Debtor has requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).  The permission granted

herein to enter into the DIP Facility Documents and to obtain funds thereunder is necessary to avoid immediate and irreparable harm to the Debtor. This Court concludes that entry of this Interim Order is in the best interests of the Debtor's estate and creditors as its implementation will, among other things, allow for access to the financing necessary to sustain the continued operations of the Debtor and further enhance the Debtor's prospects of a successful reorganization. Based upon the foregoing findings, acknowledgements, and conclusions, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1. <u>Disposition</u>. The Motion is granted on an interim basis on the terms set forth in this Interim Order. Any objection to the interim relief sought in the Motion that has not previously been withdrawn or resolved is hereby overruled on its merits.

<u>**AUTHORIZATION FOR DIP FINANCING**</u>

2. <u>Authorization for DIP Financing</u>.

   (a) The Debtor is hereby authorized to make a draw on the DIP Facility of an amount up to $50,000 on an interim basis. The Debtor's ability to draw on the balance of the DIP Facility up to an aggregate amount of $100,000 is subject to approval of this Court in the Final Order.

3. <u>Authority to Execute and Deliver Necessary Documents</u>.

(a)  The Debtor is authorized to negotiate, prepare, enter into, and deliver the DIP Facility Documents, as may be reasonably requested by the DIP Lenders and in accordance with the terms of the DIP Term Sheet.

(b)  The Debtor is further authorized to perform all of the obligations and acts required under the DIP Facility Documents, and such other agreements as may be required by the DIP Facility Documents to give effect to the terms of the financing provided for therein, and in this Interim Order.

4.  <u>Valid and Binding Obligations</u>.  All obligations under the DIP Facility Documents shall constitute valid and binding obligations of the Debtor, enforceable against it and its successors and assigns, in accordance with the terms of the DIP Facility Documents and of this Interim Order.

5.  <u>Amendments, Consents, Waivers, and Modifications</u>.  The Debtor, with the express written consent of the DIP Lenders, may enter into any non-material amendments, consents, waivers or modifications to the DIP Facility Documents without the need for further notice, hearing or any order of this Court.  Material amendments, consents, waivers, and modifications of the DIP Facility Documents shall require the express written consent of the DIP Lenders.

**PARI PASSU DIP LIENS AND DIP SUPERPRIORITY CLAIMS**

6.  <u>DIP Lenders' Lien Priority</u>.

(a)  To secure the DIP Loans, the DIP Lenders are hereby granted, pursuant to sections 364(c)(1) and 364(d)(1), valid, enforceable and fully perfected, the Pari Passu DIP Liens on the Collateral, subject only to (A) the Permitted Liens, and (B) the Carve-Out.

(b)    The Pari Passu DIP Liens shall be effective immediately upon the entry of this Interim Order and shall not at any time be made subject or subordinated to any other lien, security interest or claim existing as of the Petition Date, or created under sections 363 or 364(d) of the Bankruptcy Code or otherwise, other than (i) the Permitted Liens and (ii) the Carve-Out.

(c)    The Pari Passu DIP Liens shall be and hereby are deemed fully perfected liens and security interests, effective and perfected upon the date of this Interim Order, without the necessity of execution by the Debtor of mortgages, security agreements, pledge agreements, financing agreements, financing statements or any other agreements or instruments, such that no additional actions need be taken by the DIP Lenders, or any other person or entity to perfect such interests.

7.    DIP Lenders' Superpriority Claim.  The DIP Lenders are hereby granted and allowed a superpriority administrative expense claim (the "DIP Superpriority Claim") pursuant to section 364(c)(1) of the Bankruptcy Code in the Debtor's Chapter 11 Case and in any successor case under the Bankruptcy Code (including any case under chapter 7 of the Bankruptcy Code, the "Successor Case") for all obligations under the DIP Facility, having priority over any and all other claims against the Debtor, now existing or hereafter arising, of any kind whatsoever, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed DIP claims shall be payable from and have recourse to, solely for this Interim Order, the Collateral.  The DIP Superpriority Claim granted in this paragraph shall be subject and subordinate in priority of payment only to payment of the Carve-Out.  Except as set forth herein, no other superpriority claims shall be granted or allowed in this Chapter 11 Case or in any Successor Case.

8. <u>Survival of Pari Passu DIP Liens, DIP Superpriority Claim</u>. The Pari Passu DIP Liens and DIP Superpriority Claim, and other rights and remedies granted under this Interim Order to the DIP Lenders, shall continue in this and any Successor Case and shall be valid and enforceable against any trustee appointed in the Debtor's Chapter 11 Case and/or upon the dismissal of the Debtor's Chapter 11 Case or any Successor Case and such liens and security interests shall maintain their priority as provided in this Interim Order until all the obligations related to the DIP Loan Facility have been indefeasibly satisfied in full.

## CARVE-OUT; RESTRICTIONS ON USE OF FUNDS

9. <u>Carve-Out</u>.

(a) The Debtor's estate, the Pari Passu DIP Liens, the DIP Superpriority Claim, and the Prepetition Liens shall be subject, in accordance with the priority set forth herein and subordinate only to, and proceeds thereof may be used to pay: (i) fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) or to the Clerk of the Bankruptcy Court (the "<u>Case Administration Fees</u>"), (ii) unpaid professional fees and expenses ("<u>Professional Fees</u>") payable to each professional retained by the Debtor (the "<u>Debtor Professionals</u>") and Creditors' Committee, if applicable (collectively with the Debtor Professionals, the "<u>Estate Professionals</u>") that are incurred or accrued prior to the date of the occurrence of a Termination Event (as defined below) as set forth in the DIP Term Sheet, and ultimately allowed by the Court, (iii) Case Administration Fees and Professional Fees incurred on or after the date of the occurrence of a Termination Event (as defined below) in an aggregate amount not to exceed $15,000, (collectively, the "<u>Carve-Out</u>"), *provided, however*, that the DIP Lenders shall not be obligated to fund any amounts in excess of the Maximum Commitment.

(b)   Nothing contained in this Interim Order shall be construed as consent to the allowance of any fees and expenses referred to above, and shall not affect any right of parties in interest to object to the reasonableness of such amounts.

10.     Restrictions on Use of Funds.

(a)   The DIP Loans will be used for (i) working capital and general corporate purposes of the Debtor, (ii) bankruptcy-related costs and expenses (subject to the Carve-Out), (iii) costs and expenses related to the reorganization process, and (iv) for any other purpose agreed upon in the DIP Facility Documents.

(b)   None of the proceeds of the DIP Loans shall be used in connection with the investigation (including discovery proceedings), initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the prepetition secured lenders or DIP Lenders (in any capacity), including in connection with the validity of the liens granted to the DIP Lenders or the prepetition secured lenders, except up to the amount of $10,000 as to be set forth in the final order.

**TERMINATION; REMEDIES; MODIFICATION OF AUTOMATIC STAY**

11.     Termination.  Upon the occurrence and during the continuance of any Event of Default under the DIP Term Sheet or the DIP Order (the "Termination Event"), subject to three (3) business days' notice to counsel to the Debtor and counsel to the U.S. Trustee, and an opportunity to seek an expedited hearing before the Bankruptcy Court (at which hearing the sole issue shall be limited to whether or not an Event of Default has occurred), the DIP Lenders may take all or any of the following actions without further order of or application to the Bankruptcy Court, and notwithstanding the automatic stay:

(a)   declare the principal of, and accrued interest on, any outstanding DIP Loans to be immediately due and payable; or

(b)  terminate any further commitment to lend to the Borrower.

## **MISCELLANEOUS**

12.  <u>Additional Perfection Measures</u>.  The Pari Passu DIP Liens shall be perfected by operation of law immediately upon entry of this Interim Order.  Neither the Debtor nor the DIP Lenders shall be required to take any action in order to validate and to perfect the Pari Passu DIP Liens.

13.  <u>Successors and Assigns</u>.  The DIP Facility Documents and the provisions of this Interim Order shall be binding upon the Debtor, the DIP Lenders and each of their respective successors and assigns, and shall inure to the benefit of the Debtor, the DIP Lenders, and each of their respective successors and assigns including, without limitation, any trustee, examiner with expanded powers, responsible officer, estate administrator or representative, or similar person appointed in a case for the Debtor under any chapter of the Bankruptcy Code.  The terms and provisions of this Interim Order shall also be binding on all of the Debtor's creditors, equity holders, and all other parties in interest, including, but not limited to a trustee appointed under chapter 7 or chapter 11 of the Bankruptcy Code.

14.  <u>Binding Nature of Agreement</u>.  The DIP Facility Documents to which the Debtor is a party shall constitute legal, valid, and binding joint and several obligations of the Debtor, enforceable in accordance with their terms.  The DIP Facility Documents have been or will be properly executed and delivered to the DIP Lenders by the Debtor.

15.  <u>Subsequent Reversal or Modification</u>.  This Interim Order is entered pursuant to section 364 of the Bankruptcy Code, and Bankruptcy Rules 4001(b) and (c), granting the DIP Lenders all protections and benefits afforded by section 364(e) of the Bankruptcy Code.  Any financial accommodations made to the Debtor by the DIP Lenders and/or Prepetition Lenders pursuant to this Interim Order and the DIP Facility Documents shall be deemed to have been

made by the DIP Lenders and Prepetition Lenders in good faith, as such term is used in section 364(e) of the Bankruptcy Code. If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, that action will not affect (i) the validity of any obligation, indebtedness or liability incurred hereunder by the Debtor to the DIP Lenders or Prepetition Lenders, prior to the date of receipt by the DIP Lenders and the Prepetition Lenders of written notice of the effective date of such action or (ii) the validity and enforceability of any lien or priority authorized or created under this Interim Order or pursuant to the DIP Facility Documents or the Prepetition Lender's loan documents.

16. <u>Priority of Terms</u>. To the extent of any conflict between or among (a) the express terms or provisions of any of the DIP Facility Documents, the Motion, any other order of this Court, or any other agreements, on the one hand, and (b) the terms and provisions of this Interim Order, on the other hand, unless such term or provision herein is phrased in terms of "as defined in" "as set forth in" or "as more fully described in" the DIP Facility Documents (or words of similar import), the terms and provisions of this Interim Order shall govern.

17. <u>No Third Party Beneficiary</u>. Except as explicitly set forth herein, no rights are created hereunder for the benefit of any third party, any creditor or any direct, indirect or incidental beneficiary.

18. <u>Survival</u>. Except as otherwise provided herein, (a) the protections afforded under this Interim Order, and any actions taken pursuant thereto, shall survive the entry of an order (i) dismissing this Chapter 11 Case or (ii) converting this Chapter 11 Case into a case pursuant to chapter 7 of the Bankruptcy Code, and (b) the Pari Passu DIP Liens and the DIP Superpriority Claim shall continue in this Chapter 11 Case, in any such Successor Case, or after any such dismissal.

19. <u>Adequate Notice/Scheduling of Final Hearing</u>. The notice given by the Debtor of the Interim Hearing was given in accordance with Bankruptcy Rules 2002 and 4001(c) and the local rules of this Court and, under the circumstances, was adequate and sufficient. No further notice of the request for the relief granted at the Interim Hearing is required. The Debtor shall mail copies of this Interim Order and notice of the Final Hearing to: (i) the Office of the United States Trustee; (ii) the Debtor's twenty largest unsecured creditors; (iii) counsel to the DIP Lenders and Prepetition Lenders; (iv) all other known parties asserting a lien against the Debtor's assets, and (v) any other party requesting notice after the entry of this Interim Order. Any objection to the relief sought at the Final Hearing shall be made in writing setting forth with particularity the grounds thereof, and filed with the Court and served so as to be *actually received* no later than seven (7) days prior to the Final Hearing at 4:00 p.m. (Mountain) by the following parties: (a) counsel to the Debtor: (i) Cooley LLP, 101 California Street, 5th Floor, San Francisco, CA 94111-5800 (attn: Keith A. McDaniels) (kmcdaniels@cooley.com), and (ii) Keleher & McLeod, P.O. Box AA, Albuquerque, NM 87103 (attn: Deron B. Knoner) (dbk@keleher-law.com); (b) Office of the U.S. Trustee, P.O. Box 608, Albuquerque, NM 87103 (attn: counsel). The Court shall conduct a Final Hearing on the Motion commencing on December 19, 2013 at 3:30 p.m. (Mountain).

20. <u>Immediate Binding Effect; Entry of Interim Order</u>. This Interim Order shall not be stayed and shall be valid and fully effective immediately upon entry, notwithstanding the possible application of Bankruptcy Rules 6004(h), 7062, and 9014, or otherwise, and the Clerk of the Court is hereby directed to enter this Interim Order on the Court's docket in this Chapter 11 Case.

21.     <u>Retention of Jurisdiction</u>.  This Court shall retain exclusive jurisdiction over all matters pertaining to the implementation, interpretation, and enforcement of this Interim Order.

### END OF ORDER ###

## **EXHIBIT A**

(DIP TERM SHEET)

# BIOMODA, INC.

## DEBTOR-IN-POSSESSION
## CREDIT FACILITY TERM SHEET

### Dated as of November 15, 2013

This term sheet (including all schedules, annexes and exhibits hereto, this "Term Sheet" and together with the Interim Order[1] and the Final Order[2] collectively, the "DIP Loan Documentation") describes certain of the principal terms and conditions of a proposed secured debtor-in-possession term credit facility (the "DIP Credit Facility") to be provided by the DIP Lenders (as defined below) to Biomoda, Inc. in connection with a case (the "Chapter 11 Case") to be filed by Biomoda, Inc., as debtor and debtor in possession (the "Debtor") in the United States Bankruptcy Court for the District of New Mexico (the "Bankruptcy Court") pursuant to chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code"). The Debtor intends to use the Chapter 11 Case to file a plan to restructure the Debtor's business and take the Debtor from a public company to a clean, debt-free, private company within four to six months after the filing of the Chapter 11 Case.

This Term Sheet is not an offer for the purchase, sale or subscription or invitation of any offer to buy, sell or to subscribe for any securities. The terms and conditions set forth in this Term Sheet do not constitute or create an agreement, obligation or commitment of any kind by or on behalf of any party, unless and until executed by each of the undersigned parties hereto.

| | |
|---|---|
| Borrower: | Biomoda, Inc. |
| Guarantor(s): | None |
| DIP Lenders: | Maria Zannes, ACH Consultants, LLC, Steven Girgenti, and other lenders party hereto from time to time |
| Secured Parties: | The holders of Class 1 Secured Claims[3] and the DIP Lenders, collectively. |
| Closing Date: | "Interim Closing Date" means the date on which the "Conditions Precedent to the Interim DIP Loan" set forth below are satisfied or waived by the DIP Lenders. |
| | "Final Closing Date" means the date on which the conditions precedent to the Final DIP (including, without limitation, entry of |

---

[1] "**Interim Order**" means an order of the Bankruptcy Court authorizing and approving the DIP Loans (including, without limitation, the Interim DIP Loan) on an interim basis, which order shall be consistent with the terms of this Term Sheet and be in form and substance acceptable to the DIP Lenders in their sole and absolute discretion.

[2] "**Final Order**" means an order of the Bankruptcy Court authorizing and approving the DIP Loans on a final basis, which order shall be consistent with the terms of this Term Sheet and the DIP Loan Documentation, shall otherwise be in form and substance acceptable to the DIP Lenders in their sole and absolute discretion, and shall include provisions to be specified by the DIP Lenders to which the Debtor agree.

[3] "**Class 1 Secured Claims**" mean all allowed claims either (a) secured by liens on the Debtor's property; or (b) subject to setoff under section 553 of the Bankruptcy Code.

2089449 v3/NY

the Final Order) shall have been satisfied or waived.

Type and Amount:   A multiple draw term loan facility in an aggregate principal amount of up to $100,000 (the "Maximum Commitment") to be made available in the following manner:  Maria Zannes shall make available up to $25,000 of the DIP Loan; ACH Consultants, LLC shall make available up to $25,000 of the DIP Loan; and Steven Girgenti shall make available up to $50,000 of the DIP Loan.

Availability:   In accordance with the DIP Term Sheet, to be made available to Borrower as follows:

Interim DIP Loan:  A term loan facility to be available in an amount of up to $100,000 commencing on the Interim Closing Date in aggregate principal amounts necessary to fund the reorganization process, all subject to the provisions of the DIP Term Sheet (the "Interim DIP Loan"); and

Final DIP Loan:  A term loan facility in an aggregate principal amount not to exceed the Maximum Commitment (inclusive of all draws under the Interim DIP Loan), subject to the terms and on the conditions set forth in the DIP Loan Documentation (the "Final DIP Loan" and, collectively with the Interim DIP Loan, the "DIP Loans").

Purpose:   DIP Loans will be used for (a) working capital and general corporate purposes of the Debtor, (b) bankruptcy-related costs and expenses (subject to the Carve-Out), (c) costs and expenses related to the reorganization process, and (d) for any other purpose agreed upon in the DIP Loan Documentation.

None of the proceeds of the DIP Loans shall be used in connection with the investigation (including discovery proceedings), initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the prepetition secured lenders or DIP Lenders (in any capacity), including in connection with the validity of the liens granted to the DIP Lenders or the prepetition secured lenders, except up to the amount of $10,000 as set forth in the DIP Orders.

Priority:   All DIP Loans and other liabilities and obligations of the Borrower to the DIP Lenders under or in connection with this Term Sheet, the DIP Loan Documentation, the Interim Order or Final Order (collectively, the "DIP Obligations") shall be:

(i)   pursuant to section 364(c)(1) of the Bankruptcy Code, entitled to superpriority administrative expense claim status in the Chapter 11 Case with priority over any and all administrative expenses, whether heretofore or hereafter incurred, of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code (but in all

cases subject to the Carve-Out); and

(ii)     pursuant to section 364(d) of the Bankruptcy Code, secured by a perfected equal security interest and lien granted to the DIP Lenders (the "<u>Pari Passu DIP Liens</u>") in and on all the Collateral (but in all cases subject to the Carve-Out). The Pari Passu DIP Liens shall not be subject to being subordinated to any other liens or security interests (whether currently existing or hereafter created), subject in each case only to permitted exceptions to be expressly agreed upon in writing by each of the prepetition secured lenders and the DIP Lenders in their sole and absolute discretion or imposed by applicable non-bankruptcy law (collectively, the "<u>Permitted Liens</u>"), and the Pari Passu DIP Liens shall be junior and subordinate to payment of the Carve-Out.

Under the proposed Interim Order, the term "<u>Carve-Out</u>" means, collectively: (i) fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) or to the Clerk of the Bankruptcy Court (the "<u>Case Administration Fees</u>"), (ii) unpaid postpetition professional fees and expenses ("<u>Debtor Professional Fees</u>") payable to each legal or financial advisor retained by the Debtor (the "<u>Debtor Professionals</u>") that are incurred or accrued prior to the date of the occurrence of a Termination Event (as defined below) and ultimately allowed by the Court pursuant to sections 328, 330, 331 and 503 of the Bankruptcy Code or any order of the Court (whenever such fees may be actually incurred prior to the Termination Event), *provided however* that the DIP Lenders shall not be obligated to fund any amounts in excess of the Maximum Commitment; (iii) unpaid professional fees and expenses (together with the Debtor Professional Fees, the "<u>Professional Fees</u>") payable to each legal or financial advisor retained by the Committee that are incurred or accrued prior to the date of the occurrence of a Termination Event (as defined in the Interim Order or Final Order as in effect) and ultimately allowed by the Court pursuant to sections 328, 330, 331 and 503 of the Bankruptcy Code or any order of the Court (whenever such fees may be actually incurred prior to the Termination Event), and (iv) Case Administration Fees and Professional Fees paid on or after the date of the occurrence of a Termination Event in an aggregate amount not to exceed $15,000.

| | |
|---|---|
| <u>Collateral</u> | "<u>Collateral</u>" means, collectively, all of the Debtor's issued and pending U.S. and International patents as of September 25, 2013. |
| <u>Interest Rate</u>: | Eight percent (8%) per annum, compounded annually (the |

"Interest"), to be calculated on the basis of 365 days a year.

| | |
|---|---|
| Maturity Date: | The DIP Loans shall mature on the earliest to occur of the following (such date, the "Maturity Date"): |

        (i)      August 1, 2014 (the "Outside Date"); and

        (ii)    the acceleration of any of the DIP Loans and the termination of the commitments to make the DIP Loans in accordance with the terms of this Term Sheet or the DIP Loan Documentation, as applicable.

| | |
|---|---|
| Representations and Warranties: | Customary and appropriate for financings of this type. |

| | |
|---|---|
| Conditions Precedent | Conditions Precedent to Interim DIP Loan. The obligations of the DIP Lenders to make the Interim DIP Loan will be subject to satisfaction, or waiver by the DIP Lenders in their sole and absolute discretion, of the following conditions precedent: |

        (i)      the Interim Order, as entered by the Bankruptcy Court, shall not have been reversed, modified, amended, stayed or vacated, or in the case of any modification or amendment, in a manner, or relating to a matter, without the express, prior written consent of each of the DIP Lenders, and the Borrower shall be in compliance in all respects with the Interim Order; and

        (ii)    no Event of Default shall have occurred and be continuing on the Interim Closing Date.

| | |
|---|---|
| Covenants: | With respect to affirmative covenants, customary for debtor-in-possession financings of this type and otherwise as specified in the DIP Loan Documentation; provided that, the Debtor shall: |

        (i)      comply with the provisions of the DIP Loan Documentation; and

        (ii)    take, or cause to be taken, all appropriate action, to do or cause to be done all things necessary, proper or advisable under applicable law, and to execute and deliver such documents and other papers, as may be required or reasonably requested by the DIP Lenders to carry out the provisions of the DIP Loan Documentation.

With respect to negative covenants, customary for debtor-in-possession financings of this type and otherwise as specified in the DIP Loan Documentation, and subject to customary grace periods and cure periods, and materiality thresholds; provided, that the Debtor shall not, without the express, prior written consent of each of the DIP Lenders, do, cause to be done, or agree to do or cause

to be done, any of the following:

(i) create, incur, assume or suffer to exist any indebtedness, except indebtedness expressly contemplated by this Term Sheet;

(ii) create, incur, assume or suffer to exist any lien upon any of its property, assets, income or profits, whether now owned or hereafter acquired, except Permitted Liens; or

(iii) convey, sell, lease, assign, transfer or otherwise dispose of (including through a transaction of merger or consolidation) any of its property, business or assets, whether now owned or hereafter acquired, out of the ordinary course of business.

Events of Default:   Customary for debtor-in-possession financings of this type, and subject to customary grace periods and cure periods, and materiality thresholds, all reasonably acceptable to the DIP Lenders, or as otherwise specified in the DIP Loan Documentation (collectively, "Events of Default"); provided that "Events of Default" shall include the following:

(i) failure by the Debtor to be in compliance in all respects with any provision of the DIP Loan Documentation

(ii) reversal, modification, amendment, stay or vacatur of the Interim Order or the Final Order, as entered by the Bankruptcy Court, without the express, prior written consent of each of the DIP Lenders;

(iii) the filing with the Bankruptcy Court of a plan of reorganization in the Chapter 11 Case that does not provide for the conversion of the entire amount loaned to the Debtor by the DIP Lenders into new common shares for the reorganized debtor in accordance with the recapitalization table attached to the Plan Term Sheet[4] as Exhibit A and for the payment of any and all accrued interest and fees of the DIP Lenders;

(iv) the appointment in the Chapter 11 Case of a trustee, receiver, examiner, or responsible officer with enlarged powers relating to the operation of the business of any Obligor (powers beyond those set forth in sections 1106(a)(3) and (a)(4) of the Bankruptcy Code);

(v) the filing of a motion by the Debtor seeking dismissal

---

[4] "**Plan Term Sheet**" means that certain Plan of Reorganization Term Sheet attached as an exhibit to the Plan Support Agreement dated as of November 5, 2013 by and between the Debtor and certain consenting lender parties thereto.

of the chapter 11 Case or the conversion of the chapter 11 Case to a case under chapter 7 of the Bankruptcy Code;

(vi)     the granting of relief from the automatic stay by the Bankruptcy Court as to any material assets of the Debtor to any other creditor or party in interest in the Chapter 11 Case; and

(vii)    any provision in this Term Sheet shall cease to be binding on or enforceable against the parties hereto.

Remedies Upon Default:

Upon the occurrence and during the continuance of any Event of Default under this Term Sheet or the DIP Order, subject to three (3) business days' notice to the Debtor and an opportunity to seek an expedited hearing before the Bankruptcy Court, (at which hearing the sole issue shall be limited to whether or not an Event of Default has occurred), the DIP Lenders may take all or any of the following actions without further order of or application to the Bankruptcy Court, and notwithstanding the automatic stay:

(i)      declare the principal of, and accrued interest on, any outstanding DIP Loans to be immediately due and payable; or

(ii)     terminate any further commitment to lend to the Borrower.

Governing Law and Jurisdiction

The laws of the State of New Mexico (except as governed by the Bankruptcy Code) shall govern this Term Sheet and the DIP Loan Documentation, except with respect to conflicts of laws.

The DIP Loan Documentation will provide that the Borrower shall submit to the exclusive jurisdiction of the Bankruptcy Court and shall waive any right to trial by jury.

*[Signature Pages Immediately Follow]*

**MARIA ZANNES, as DIP Lender**

By: _____

Name: Maria Zannes

**ACH CONSULTANTS, LLC as DIP Lender**

By: _____

Name: ~~_____~~

ERIC H. HIRSCH

Member

**STEVEN GIRGENTI, as DIP Lender**

By: _____
Name: Steven Girgenti

[Signature Page to DIP Term Sheet]

**BIOMODA, INC., as Borrower**

By: _____

Name: Timothy Peter Zannes

Title:   Corporate Secretary and General Counsel

[Signature Page to DIP Term Sheet]

2089449 v2/NY